## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RITZIE ENID ROBLES,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 19-1148 (GLS)

## OPINION AND ORDER

Plaintiff Ritzie Enid Robles ("Plaintiff") seeks judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"). Docket No. 3. On October 23, 2020, Plaintiff filed a motion requesting the Court to reverse the Commissioner's final decision denying disability benefits because the decision was unsupported by substantial evidence, as required by 42 U.S.C. § 405(g). Docket No. 30. The Commissioner opposed (Docket No. 31) and both parties had the opportunity to present oral arguments during a hearing held on June 25, 2021. Docket No. 42.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 5. After careful review of the administrative record, the briefs on file and the arguments raised by the parties during the hearing, the Commissioner's decision is **AFFIRMED**.

### I.    PROCEDURAL BACKGROUND

On April 23, 2014, Plaintiff, who worked as a manager in the mortgage bank industry since 1986, filed an application for disability insurance benefits due to a back injury, arthritis, and depression (Tr[1]. 386-392; 409-410). Plaintiff claims that her disability began on January 22, 2014. Id. Plaintiff's application was denied initially and upon reconsideration (Tr. 277-302). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on April 25, 2017, a hearing was held before ALJ Judith Torres (Tr. 47-69). Plaintiff, represented by counsel, presented her

---

[1] "Tr." refers to the transcript of the record of proceedings.

testimony before the ALJ. Id. Medical experts Dr. Jorge Hernández Denton and Dr. Wildaliz Caro González, and Vocational Expert ("VE") Dr. Héctor Guerra also testified during the hearing. Id.

On May 30, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of January 22, 2014 through December 31, 2018, the last date insured (Tr. 13-32). Plaintiff asked the Appeals Council to review the final decision issued by the ALJ and, on December 14, 2018, the Appeals Council denied this request (Tr. 6-8), making the Commissioner's decision the final decision for review by this Court. On February 15, 2019, Plaintiff filed the Complaint, which the Commissioner answered on June 1, 2020, and both parties filed supporting memoranda. Docket Nos. 3, 17, 30 and 31.

## II.    LEGAL FRAMEWORK

### A.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse, or remand the decision of the Commissioner based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018). As recently explained by the United States Supreme Court, under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. See Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld by the court if a reasonable mind, reviewing the evidence in the record, could accept them as adequate to support his conclusion. See Rodríguez v. Secretary of Health and Human

Services, 647 F. 2d 218, 222 (1st Cir. 1981). And even if there is also substantial evidence in support of Plaintiff's position, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision, if supported by substantial evidence. See 20 C.F.R. § 404.1546(c); Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987). Therefore, reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. Manso–Pizarro, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence in the record. See Purdy v. Berryhill, 887 F. 3d 7 (1st Cir. 2018). Courts will not second guess the Commissioner's resolution of conflicting evidence. See Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 769 (1st Cir. 1991). In sum, this court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey v. Barnhart, 276 F.3d at 9.

## B.  DISABILITY DETERMINATION BY THE SSA: FIVE STEP PROCESS

To receive benefits under the Social Security Act, the ultimate question is whether Plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42 U.S.C. § 423(d)(2)(A)). Plaintiff generally has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Rivera–Tufiño v. Commissioner of Social Security, 731 F.Supp.2d 210, 212–13 (D.P.R.2010). Further, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

In determining whether a claimant is disabled, the Commissioner engages in a five-step sequential evaluation. See 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-142; Goodermote v.

Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. See 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where he must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. See López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 378 (D.P.R. 2014) (citing 20 C.F.R. § 404.1520(c)). The step two severity requirement imposes a de minimis burden, which is designed to screen out groundless claims. Mateo Rivera v. Commissioner, 2020 WL 7786920, at * 3 (D.P.R.) (citing McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986)).

If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment", or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). See 20 C.F.R. § 404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. See 20 C.F.R. §§ 404.1520(e) and 404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). However, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See 20 C.F.R. § 404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989). If there are none, then the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

### III.   DISCUSSION

Plaintiff argues that the ALJ erred by failing to address the effects of the credited mild mental functional limitations on Plaintiff's ability to perform her past relevant skilled work. The Commissioner sustains that the ALJ's decision was based on substantial evidence on the record. Plaintiff does not object to the ALJ's determination as to her physical disability. Her request to remand is based solely on the ALJ's RFC determination given her mental impairment. The Court's analysis here is thus limited to the ALJ's findings regarding Plaintiff's mental impairment.

### A.   THE ALJ DECISION

At step one of the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through her last date insured (Tr. 21) and proceeded to step two of the analysis.

At step two, the ALJ determined that Plaintiff's only severe impairment was lumbar spine disorder and, with respect to her mental condition, the ALJ found that Plaintiff's affective disorder was non-severe because she was able to perform her basic mental work activities with not more than minimal limitations (Tr. 22). In finding that Plaintiff's mental condition was non-severe under 20 C.F.R. §404.1520a (d)(1), the ALJ considered four broad areas of mental functioning, known as the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves. See 20 C.F.R.  Pt. 404, Subpt. P, App. 1, § 12.00. When the degree of limitation in these areas is found to be mild or better, as in this case, the ALJ will generally conclude that the mental impairment is not severe. See 20 C.F.R. § 404.1520a(d)(1); Mateo Rivera v. Commissioner, 2020 WL 7786920, at *3.

In the first area of functioning— understanding, remembering, or applying information— the ALJ found that Plaintiff had a mild limitation. The ALJ found that Plaintiff had demonstrated almost no difficulty understanding, remembering, or applying information in an effective and sustained basis in a work setting (Tr. 22). The ALJ noted that during the hearing Plaintiff could adequately remember her work and medical history; she asked and answered questions and provided explanations; and she was able to provide insight about her impairment, demonstrating no evidence of short- or long-term memory deficits. As to Plaintiff's ability to interact with others, the ALJ found that she was mildly limited because she could interact with other individuals in an independent, appropriate, and effective manner on a sustained basis. Id. Plaintiff lived with her

mother, spent time with her family members and, without any difficulty or assistance, went shopping and attended appointments. Id. In the third functional area— concentrating, persisting, or maintaining pace— the ALJ also found that Plaintiff had mild limitations because she could timely and appropriately complete tasks commonly found in work settings, could maintain a conversation without difficulty, and did not have to take prescribed medications to improve her concentration. Id. Finally, as to the fourth functional area, the ALJ concluded that Plaintiff was able to adapt and manage herself on an independent and sustained basis. The ALJ noted that Plaintiff had never received inpatient psychiatric treatment or outpatient mental health services and did not take prescribed medication. Id. The ALJ also noted that, even though medical examiner Dr. Jorge L. Suria Colón ("Dr. Suria") had diagnosed Plaintiff with major depressive disorder (recurrent/moderate), his findings were exclusively based on Plaintiff's subjective complaints. Id.; Tr. 528-533. And that Dr. Suria did not point to any functional limitations (Tr. 22). Thus, at step two of the sequential analysis, the ALJ determined that Plaintiff's medically determinable mental impairment caused no more than mild limitations in the four functional areas and was non-severe (Tr. 23).

The ALJ noted that her findings at step two regarding Plaintiff's mental functioning *were also considered in formulating the RFC*. Id. (emphasis added). The ALJ clearly established that the paragraph B analysis was also applied in steps three and four:

> [T]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96–8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.  (Tr. 23).

Therefore, at the conclusion of the step two analysis, the ALJ incorporated the paragraph B criteria in the step four RFC determination. The RFC's assessment thus considered the degree of mental limitations found at step two and "this discussion and incorporation by reference is sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in formulating the RFC". See D.C. v. Commissioner, 2021 WL 1851830, at *5. This is especially true when, as in

this case, the mental impairment found at step two was not severe but mild. See Id. (citing Holley v. Commissioner, 590 F. App'x 167, 169 (3rd Cir. 2014) (holding that when ALJ found that claimant "had- at most- minor mental impairments," the ALJ did not err when RFC included no mental limitations); Makowski v. Commissioner, 2017 WL 3151243, at *7 (D.N.J. 2017) (concluding "even if the ALJ did not discuss the impact of the admittedly mild limitations from Plaintiff's mental impairments at the RFC stage, despite having discussed them at length elsewhere in the opinion, this omission is not reversible error because the ALJ was entitled to not include 'minimal or negligible' deficiencies in the RFC.")). See e.g., Green v. Saul, 2020 WL 3146619, at *4 (S.D. Ga. May 19, 2020), report and recommendation adopted, 2020 WL 3163291 (S.D. Ga. June 12, 2020); Younge v. Berryhill, 2017 WL 2978758, at *12-13 (E.D. Pa.)(ALJ adequately discussed why plaintiff's mental impairment was not severe and was not required to discuss the mental impairment in the RFC evaluation). Upon consideration of the mild mental impairments found in the step two analysis, the ALJ concluded that these did not cause a functional limitation which would affect Plaintiff's RFC. And, as will be further explained, such a conclusion was based on substantial evidence in the record.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC (Tr. 23-27).

The ALJ specifically stated in her opinion that, in formulating the RFC, she had an obligation to consider both severe and non-severe impairments (Tr. 20) and, after consideration of the entire record and all of Plaintiff's symptoms, concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §404.1567(a) (Tr. 23). The ALJ specifically concluded that Plaintiff had the capacity to perform the following tasks: lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently; sit six hours in an 8-hour day, stand four hours in and 8-hour day, and walk four hours in an 8-hour day; handle, finger and feel items frequently with the left hand and right hand; occasionally climb ramps and stairs, and never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel and crouch; never crawl; never work at unprotected heights; occasionally work around moving mechanical parts and operate a motor vehicle (Tr. 23).

Even though the ALJ listed only exertional limitations in the RFC summary (Tr. 23), the ALJ considered Plaintiff's allegations of inability to work due to depression (Tr. 24). To this end, the ALJ noted that Plaintiff had reported increased insomnia, decreased sleep, tiredness, lack of concentration and attention, and feelings of irritability and intolerance (Tr. 24, 409, 431). Further, the ALJ considered Plaintiff's allegations that she had difficulty getting dressed or doing household chores, that she could only cook simple meals, did not wear clothing with buttons, could not bathe her dog, had trouble sleeping, and spent the day pacing between her bedroom and the terrace (Tr. 24-25). The ALJ also considered Plaintiff's allegation that she had no social life and was unable to be around crowds (Tr. 25).

After evaluating the foregoing evidence, the ALJ found that Plaintiff's medically determinable impairments— which included her non-severe mental impairment— could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence, opinion evidence and other evidence (Tr. 24). Specifically, the ALJ considered that Plaintiff was able to take her daughter to school and pick her up, take care of her pets, take care of herself without assistance, prepare meals, dust, and do laundry with help, clean bathrooms, drive, shop twice a week for groceries, read daily, listen to music on occasions, interact with others by phone and online media, and attend sporting events (Tr. 24, 416-419, 441-445).

In formulating the RFC, the ALJ also noted that, during Plaintiff's evaluation with consultative examiner Dr. Priscilla Mieses-Llavat[2], Plaintiff acknowledged that she was independent in her activities of daily living, occasionally needing assistance from her family (Tr. 25, 524). Likewise, Plaintiff admitted to Dr. Suria that she took care of her personal grooming, was able to do light household chores, and managed her own medications (Tr. 25, 530), and testified that she prepared meals for herself and her mother (Tr. 25). The ALJ also found Dr. Caro's testimony that Plaintiff had no severe mental impairment to have been persuasive because she is a medical expert familiar with SSA policy and regulations and based her opinion on the complete medical record (Tr. 26).

After concluding the RFC analysis, at the fourth step, the ALJ deemed that claimant was able to perform her past relevant work as manager in a mortgage corporation, as defined in the

---

[2] Dr. Mieses-Llavat is specialized in physical medicine and rehabilitation and evaluated Plaintiff as part of her disability application (Tr. 518-526).

Dictionary of Occupational Titles (Tr. 27). Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 27).

### B.  PLAINTIFF'S ALLEGATIONS OF ERROR

Plaintiff challenges the ALJ's determination on two grounds. First, that the ALJ erred in failing to address the credited mild mental functional limitations in all four of the mental functional areas by: (1) not including these limitations in the RFC finding; (2) not presenting a complete hypothetical question for the VE's consideration, and (3) failing to explain how Plaintiff's past relevant skilled work could be performed despite these limitations. Docket No. 30 at pages 4-10. Second, that the ALJ did not properly explain how Plaintiff's allegations of pain due to her physical impairment, combined with her mental limitations would allow her to perform her past relevant work which was stressful and required concentration. Id. at pages 11-12. The fundamental basis for these arguments is that the ALJ's RFC determination was erroneous. The Court disagrees. The ALJ did consider Plaintiff's credited mild mental limitations when formulating the RFC not only by incorporating the step two analysis but also by considering Plaintiff's allegations and the medical evidence on record in making the RFC determination. The ALJ was not obliged to include minimal mental deficiencies in the RFC determination. And the very mild nature of Plaintiff's limitations and the substantial evidence on the record sustain the ALJ's conclusion that Plaintiff did not prove that her non-severe impairment impacted her work-related functioning.

### 1.  Analysis of Mild Mental Functional Limitations in the RFC Assessment

The RFC determination is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment". See 20 C.F.R. §404.1545(a). "The RFC assessment comes into play at step four, where the ALJ determines whether, despite her limitations, the claimant retains capacity to perform his past relevant work." D.C. v. Commissioner, 2021 WL 1851830 (D. N.J., May 10, 2021); 20 C.F.R. §404.1545(a)(5)(i). A claimant retains the capacity to perform her past relevant work when she can perform the functional demands and duties of the job as actually performed or as generally required by employers throughout the national economy. See SSR 82-61, 1982 WL 31387 at *2; Ramos-Rodríguez v. Comm'r of Soc. Sec., 2012 WL 2120027, at *5 (D.P.R.). In making this determination, the ALJ must consider all the evidence in the record, including claimant's symptoms, laboratory findings, daily activities, medical sources statements,

and the claimant's medical history. See 20 C.F.R. §404.1545(a)(1); SSR 96-8P. An ALJ's RFC findings must thus be supported by the medical evidence in the record.

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may— when considered with limitations or restrictions due to other impairments— be critical to the outcome of a claim." See SSR 96-8P: "Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims" (S.S.A. July 2, 1996). The RFC determination primarily focuses on an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Id. Thus, it is essential for the ALJ to evaluate the effect that any mental impairment may have on work-related activities, such as understanding, carrying out and remembering instructions, using judgment in making work-related decisions, responding appropriately to supervision, co-workers, and work situations, and dealing with changes in a routine work setting. Id. However, the ALJ is only required to consider evidence that is credible. And if the ALJ "concludes that a claimant's deficiency is 'so minimal or negligible that … it would not limit her ability' to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error." See D.C. v. Commissioner, 2021 WL 1851830, at *5 (citing Ramírez v. Barnhart, 372 F.3d 546, 555 (3rd Cir. 2004); Lee v. Commissioner, 248 Fed. Appx. 458, 462 (3rd Cir. 2007)("there was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence")).

The plaintiff bears the burden of proving she cannot return to her former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). Plaintiff in this case failed to persuade the ALJ that her non-severe impairment impacted her work-related functioning.[3] Although Plaintiff complained of symptoms, such as insomnia, she did not receive any outpatient mental health counseling during the relevant period. Neither did she seek help from any primary care physician for treatment or the prescription of medications for her mental impairment. And, even though Plaintiff included depression as one

---

[3]        A plaintiff does not meet the burden of proof when she cannot establish that that non-severe impairments impact work-related functioning in any way beyond the limitations included in the RFC. See e.g., Richardson v. Commissioner, 2016 WL 3586623, at *8 (W.D. Michigan)(unreported).

of her disabilities when she filed her claim for disability before the SSA, there is no evidence that Plaintiff had previously complained of any mental impairment or symptoms of depression nor received mental health treatment of any kind. After her disability claim was denied, on December 1, 2014, State Agency Examiners Dr. Zulma Nieves stated that Plaintiff had a "slight" depression but determined that Plaintiff's mental impairment was non-severe pursuant to the agency's rules (Tr. 297). The only medical evidence presented to establish Plaintiff's mental impairment was the testimony of Dr. Suria, a psychiatrist who Plaintiff visited once as part of her Social Security disability application, and who based his findings exclusively on Plaintiff's subjective complaints. Tr. 528-533. And Dr. Suria did not report *any* functional limitations for Plaintiff. Id. Further, during the hearing, Dr. Caro testified that Plaintiff was not receiving any treatment and that she did not have a severe mental condition (Tr. 65-55). Dr. Caro based her conclusion on Plaintiff's written statements and the report rendered by Dr. Suria, who also noted that Plaintiff did not have any history of symptoms or medications (Tr. 65-66, 415-421, 441-447). The record is thus completely devoid of evidence that Plaintiff's non-severe mental impairments affected her capacity to work. No additional limitations had to be incorporated into the RFC assessment made by the ALJ.

### 2. The ALJ's Assessment of Plaintiff's Subjective Allegations of Pain and her Ability to Perform Skilled Work

Contrary to Plaintiff's position on appeal, Plaintiff's alleged pain was considered in the RFC determination and there was simply no evidence to sustain Plaintiff's position that her pain impacted her ability to concentrate and, consequently, to adequately perform in her previous work setting as a mortgage manager. The ALJ considered Plaintiff's allegations of pain in the RFC determination (Tr. 24-26). The ALJ noted that Plaintiff reported in her written statements that she felt constant pulling pain in her back to her legs and had pain while standing, and that Plaintiff testified that she felt severe and persistent pain in her back and cervical area, burning pain in her neck and shoulders, and pain in her hip (Tr. 24, 431). The ALJ evaluated various medical records and examinations, including x-rays and MRI's, and noted that examinations from May 2015 were normal (Tr. 26, 557, 560), Plaintiff's condition was deemed stable in October 2015 (Tr. 26, 612), Plaintiff was not taking prescribed medication and her condition continued to be stable in February 2016 (Tr. 26, 616, 618), Plaintiff's back condition was normal in March 2016 (Tr. 26, 620, 626), and continued stable in March 2017, when she only complained of hand pain (Tr. 26, 635). The

ALJ also noted that, by April 2017, Plaintiff's back examination reflected normal results (Tr. 26, 646).

During the hearing, the VE testified that, if pain impacts a person to the point that it interferes with concentration, that person is unable to perform his or her job in a sustainable way (Tr. 68). Plaintiff thus sustains that the VE's testimony at the hearing should have led the ALJ to conclude that Plaintiff could not perform her past relevant work due to her pain. But that is not Plaintiff's case. As previously discussed, the medical evidence before the ALJ supports the conclusion that Plaintiff was able to concentrate, even if mildly limited (Tr. 22-23). Specifically, the ALJ concluded that Plaintiff demonstrated almost no difficulty understanding, remembering, or applying information in an effective and sustained basis in a work setting, could timely and appropriately complete tasks commonly found in work settings, could maintain conversations without difficulty, and did not take medications to improve her concentration. Id. In fact, all the medical experts, including the psychiatrist who diagnosed Plaintiff with depression, concluded that Plaintiff's concentration was adequate (Tr. 283, 297, 525, 528-533). There is thus no basis to conclude that the ALJ's decision should be disturbed because of the VE's testimony. Simply, there is no evidence to sustain that Plaintiff's pain impacted her concentration in such a way that she could not perform her past relevant work because of pain.

## IV.    CONCLUSION

The ALJ properly evaluated the record as a whole and her decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand based upon a violation of the substantial evidence rule, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of August 2021.

s/Giselle López Soler
GISELLE LOPEZ SOLER
United States Magistrate Judge
